UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,       )
                                )
        v.                      )        Cr. No. 94-10287-MLW
                                )
FRANCIS P. SALEMME,             )
            Defendant.          )


<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                    November 6, 2012

The court has received former fugitive defendant James Bulger's Motion for Production of Sealed Documents, which was filed on October 31, 2012, in this dismissed case (the "Motion"). The Motion does not comply with the requirements of Rule 7.1(A)(2) of the Local Rules of the United States District Court for the District of Massachusetts, which states that, "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."[1]  It is particularly important that such a conference occur with regard to the Motion.

Bulger requests that "this court order that the sealed records on the docket in this case be produced to defense counsel" in <u>United States v. Bulger</u>, Cr. No. 99-10371-RGS.  Motion at 1.  The Motion also states that "since [Bulger] is a co-defendant, defense

---

[1] The Motion is also not accompanied by a memorandum and affidavit as required by Local Rule 7.1(B)(1).

counsel does not foresee issues with a Protective Order." Id. at 2. This prediction, however, is incorrect.

In this case, there were many sealed submissions and lobby conferences that were conducted with the government ex parte to permit the court to consider in camera whether certain information should be disclosed to any or all of the defendants. At least some of those submissions and some transcripts of those conferences were not made available to Bulger's co-defendants. The court may have also received under seal ex parte submissions from one defendant that were not shared with his co-defendants.

In addition, the court entered, and in some instances modified, many protective orders, some of which are attached hereto. The orders were issued, in part, to protect the the confidentiality of informants and information provided by them. These interests remain significant. For many years, this court struck on a case-by-case basis the appropriate balance between considerations favoring confidentiality and any legitimate competing considerations. See, e.g., United States v. Salemme, 985 F. Supp. 193 (D. Mass. 1997). In view of findings made by this court, among others, and the nature of the charges against Bulger in the pending case before Judge Richard Stearns, it is particularly important that issues concerning access to sealed submissions and transcripts in the instant case be made carefully and that appropriate protective orders be issued. See United

States v. Salemme, 91 F. Supp. 2d 141, 208-214 (D. Mass. 1999) (findings regarding the danger posed by Bulger when told by the Federal Bureau of Investigation of individuals providing information about his criminal activity); rev'd in part on other grounds United States v. Flemmi, 225 F.3d 78 (1st Cir. 2000); Donahue v. United States, 634 F.3d 615 (1st Cir. 2011); McIntyre v. United States, 545 F.3d 27 (1st Cir. 2008).

Moreover, it is not clear from the Motion whether Bulger is seeking an order requiring that the government or the District Court produce "all sealed records on the docket in this case" to him. Motion at 1.[2] It is, however, the duty of the government to produce discovery to a defendant, not the duty of the court. See, e.g., F.R.Crim.P. 16(a); Kyles v. Whitley, 514 U.S. 419 (1995).

In view of the foregoing, it is hereby ORDERED that:

1. The Motion (Docket No. 2355) is DENIED without prejudice. See Hasbro, Inc. v. Serafano, 168 F.R.D. 99, 101-02 (D. Mass. 1996) (motion denied without prejudice because of failure to consult prior to filing as required by Local Rule 7.1(A)(2)); United States v. Roberts, 978 F.2d 17, 20 (1st Cir. 1992) ("A district court possesses great leeway in the application and enforcement of its local rules.").

---

[2] In Defendant's Motion for Production of Sealed Documents in the case before Judge Stearns Bulger requested an Order directing the Clerk to produce all sealed docket entries. See United States v. Bulger, Cr. No. 99-10371-RGS (Docket No. 727).

2. Counsel for Bulger and the government shall confer forthwith and, by November 14, 2012, inform the court of whether they have reached an agreement on the production by the government of particular documents under seal in the instant case and on a related proposed protective order. If necessary, the parties may request additional time to attempt to reach such agreements.

3. If the parties are unable to agree on an order they propose that the court enter with regard to submissions and transcripts under seal in this case, Bulger may file a renewed motion, in the manner required by Local Rule 7.1. The government shall respond to any such motion within fourteen days.

UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
    v.                            )    Cr. No. 94-10287
                                  )
FRANCIS P. SALEMME, ET AL.        )

ORDER

WOLF, D.J.                                      June 26, 1997

For the reasons that have been discussed at the  hearings on
June 23, 24, and 25, 1997, and which will be described at the
hearing on June 27, 1997, with regard to discovery concerning the
evidentiary hearings that have been granted concerning defendants'
motions to suppress the 1984-85 Drug Enforcement Administration
("DEA") and Federal Bureau of Investigation ("FBI") electronic
surveillance targeting defendants Stephen Flemmi and James "Whitey"
Bulger, among others, (M.B.D. No. 84-795), the October 29, 1989 FBI
electronic surveillance of 34 Guild Street, Medford, Massachusetts,
(M.B.D. No. 89-1015), and certain related matters including
defendants' claims that Flemmi and Bulger were acting in
cooperation with the FBI concerning at least some of the acts
alleged to be crimes in the Fourth Superseding Indictment ("4SI")
including the RICO, RICO conspiracy, and conspiracy to extort
bookmakers and drug dealer, charges (4SI, Counts 1, 2, and 3), it
is hereby ORDERED that:

1.   In responding to this Order the attorneys for the
government shall inform of this Order all federal, state, and local
law   enforcement   agencies   or   entities   that:   (a)   formally
participated in the criminal investigation that resulted in this

case;[1] (b) provided to the federal government information that was included in any application or affidavit concerning M.B.D. Nos. 84-795 and/or 89-1015, and/or provided information which was not referred to in any such affidavit or application but which is relevant to the questions now being litigated of whether the government made the "full and complete statement[s]" required by 18 U.S.C. §§ 2518 (1)(c) and/or (11)(a)(ii); or (c) have evaluated or investigated any issues relevant to the pending proceedings.[2]

2. The government shall as soon as possible, and in any event by July 1, 1997, produce to counsel for defendant Stephen Flemmi:

a) All statements by Flemmi within the meaning of Fed. R. Crim. P. 16(a)(1)(A).[3]

---

[1]Such agencies include, but may not be limited to, the FBI, including its Office of Professional Responsibility ("FBI-OPR"), the Drug Enforcement Administration, the Massachusetts State Police, the Quincy, Massachusetts Police Department, the Organized Crime Section of the Criminal Division of the Department of Justice, and the Offices of the United States Attorneys in Massachusetts and Rhode Island.

[2]Such entities may include, but not be limited to, the FBI-OPR, the Office of the Inspector General of the Department of Justice, the Office of Professional Responsibility of the Department of Justice, and the Public Integrity Section of the Criminal Division of the Department of Justice.

[3]With regard to all documents to be produced pursuant to this Order, the government may redact all file numbers, informant numbers, and other identifying information if it has a good faith belief that disclosure of such information may compromise the confidentiality of its recordkeeping system or the identity of informants, provided, however, that this process shall be conducted in a manner that does not result in the masking of relevant information, including, but not limited to, whether a redacted reference is to Flemmi, Bulger, or Angelo "Sonny"

b)    Any document or other record which is favorable to Flemmi and his codefendants because it tends to support Flemmi's claim that he was acting in cooperation with an agent or agency of the government in connection with one or more of the charges in the Fourth Superseding Indictment.

c)    As agreed by the government, if Flemmi is not furnished every document in his FBI "informant" and "administrative" files in response to subparagraphs (a) and (b) hereinabove, the court shall be provided the remaining undisclosed documents for its in camera review in order to determine whether they should be disclosed to Flemmi.

3.    Upon receiving the documents and records to be provided pursuant to ¶ 2 hereinabove, Flemmi and his counsel shall conduct a prompt review and inform the court if Flemmi objects to any such documents and records being disclosed to his codefendants.    If Flemmi does not object, his counsel shall so inform the government, which shall then provide such documents and records to Flemmi's codefendants.

4.    The government shall, by July 18, 1997, produce to counsel for each defendant:

a)    Any additional documents or records relied upon by FBI Special Agent John Michael Callahan, Chief Division Counsel for the Boston Division of the FBI, in concluding that "Flemmi's control agents were obviously aware over the years from what Flemmi

---

Mercurio, or whether the redacted portions of a document refer to one or more than one source of information.

reported that he was engaged in illegal gambling and in LCN policymaking" and that such agents "'at least tacitly authorized (his) participation.'" Affidavit of Paul E. Coffey, Esq., dated November 13, 1995, and filed ex parte, under seal, ¶ 7 n.1 (evidently quoting a statement by Callahan).[4]

b) Any document or record that tends to support Flemmi's claim that Bulger was acting in cooperation with an agent or agency of the government in connection with one or more of the charges in the 4SI. See June 25, 1997 Affidavit of Stephen J. Flemmi. Such documents or records shall include, but not be

---

[4]The court is not ordering that Callahan's written report be furnished to defendants by July 18, 1997. The government is, however, encouraged to do so in order to facilitate the efficient progress of the evidentiary hearings now being scheduled concerning the motion to suppress MBD No. 84-795. The defendants have expressed their intention to call Callahan as a witness at those hearings. If he is called to testify, he will be deemed a government witness. See Fed. R. Crim. P. 12(i). After he has testified, the defendants will be entitled to his relevant written statements, including at least portions of the report quoted by Coffey. Id.; Advisory Committee Note to 1983 Amendment regarding Fed. R. Crim. P. 12(i)("when a federal . . . law enforcement officer has testified at a suppression hearing, the defendant will be entitled to any statement of the officer in the possession of the government and relating to the subject matter to which the witness has testified, without regard to whether the officer was in fact called by the government or the defendant"); United States v. Duncan, 712 F.Supp. 124, 130 (S.D. Ohio 1988). If, as it appears, any arguable work-product privilege has been waived, the defendants will obtain at least part of Callahan's report eventually and it is preferable that they receive it prior to his testimony. Indeed, even if the government believes that it may have a basis for protecting Callahan's report from compelled disclosure, it may decide that in the present posture of this case it is in the interest of the fair administration of justice to disclose it voluntarily. See, e.g., Berger v. United States, 295 U.S. 78, 88 (1935) (stating that the government's interest is "not that it shall win a case, but that justice shall be done").

4

limited to, those relied upon by Callahan if, as it appears, he also concluded that Bulger's participation in illegal gambling and LCN policymaking was at least tacitly approved by agents of the FBI.

c) Any document or record that tends to show that Department of Justice and/or FBI regulations or guidelines were, in any way, not complied with concerning Flemmi and/or Bulger. The documents and records covered by this subparagraph include, but are not limited to, materials indicating that: (i) required records were not prepared or maintained;[5] (ii) required instructions were not given; (iii) unauthorized instructions were given; (iv) established procedures for seeking authorization or guidance concerning the participation of an informant in criminal activity were not followed; and/or (v) any required notification to appropriate authorities of unauthorized criminal activity by Flemmi and/or Bulger was not made.

d) The names of each agent of the government who dealt

---

[5]If government agents failed to follow required or customary procedures to record accurately communications with informants relevant to this case, the court will consider the possibility of ordering the government, in the discharge of its <u>Brady</u> obligations, to conduct appropriate interviews as part of its "duty to learn of any favorable evidence known to others acting on the government's behalf." <u>Kyles v. Whitley</u>, 115 S.Ct. 1555, 1567 (1995); <u>see also</u>, <u>United States v. Hanna</u>, 55 F.3d 1456, 1460-61 (9th Cir. 1995)(holding that government, as part of its duty under <u>Kyles</u>, was required in particular circumstances to inquire about oral, unrecorded statements between police officers); <u>United States v. Van Nuys</u>, 707 F.Supp. 465, 470 (D. Colo. 1989)(holding that deliberate failure to prepare DEA 6 reports of witness interviews constituted a violation of the duty to preserve evidence that deprived defendant of right to a fair trial).

with Flemmi and/or Bulger in his capacity as an informant; or who had responsibility for evaluating his fitness to serve, or continue to serve, as an informant; or had responsibility for reviewing or approving his participation in any criminal activity.

e)     Any document or record which tends show that the government did not make the full and complete statement concerning the necessity for electronic surveillance required by 18 U.S.C. § 2518 (1)(c) in any application or affidavit relating to M.B.D. 84-795.

f)     Any document or record that tends to contradict any representation in any application or affidavit relating to M.B.D. 84-795 including, but not limited to, representations that: (i) Bulger and Flemmi were illegally participating in gambling offenses, see, e.g., December 24, 1984 Affidavit of Steven Boeri ("Boeri Aff.") at 3-4, Bate Stamp ("BS") 14579-80; (ii) Bulger and Flemmi were illegally participating in narcotics offenses, id. at 2-3, BS 14578; (iii) electronic surveillance was necessary to determine or prove the illegal activities of Bulger and Flemmi, id. at 100-01, BS 14677-78; and (iv) electronic surveillance was necessary to determine or prove the illegal activities of alleged associates of Bulger and Flemmi, id.

5.     With regard to the electronic surveillance of 34 Guild Street, Medford, Massachusetts on October 29, 1989, M.B.D. No. 89-1015, the government shall, by July 18, 1997, produce to counsel for each defendant:

a)     Any document or record reflecting information

6

received from Mercurio which is relevant to whether or not the government, in applying for the roving warrant, made the "full and complete statement[s]" concerning necessity and the practicality of specifying the place to be bugged required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii). Such documents and records include, but are not be limited to, materials relating to when Mercurio discussed the possible LCN induction ceremony with agents of the government, Mercurio's communications concerning the location of that event, and Mercurio's statements, if any, concerning his willingness to testify if necessary and/or to record any conversations consensually.[6]

b)    Any document or record that tends to show that Department of Justice and/or FBI regulations or guidelines were, in any way, not complied with concerning Mercurio.    See ¶ 4(c) hereinabove.[7]

c)    Any other document or record helpful to the defendants because it tends to show that the government did not make the "full and complete statement[s]" concerning necessity and the practicality of specifying the place to be bugged required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii), as those requirements have

---

[6]On June 25, 1997 the court understood the government to represent that it was willing to provide discovery relevant to the October 29, 1989 electronic surveillance concerning Mercurio comparable to that being ordered more generally concerning Bulger and Flemmi.

[7]Such information is, among other things, relevant and material concerning the credibility of any testimony Mercurio may provide.

7

been interpreted by this court. See <u>United States v. Ferrara</u>, 771 F.Supp. 1266 (D. Mass. 1991); May 22, 1997 Memorandum and Order Unsealed and Partially Undredacted June 6, 1997 ("May 22, 1997 Memorandum and Order") at 9-11; June 19, 1997 Memorandum and Order at 10 n.5. Such documents and records include, but are not limited to, materials containing information which tends to show that the government was told, or learned, the address of the planned LCN induction ceremony prior to the afternoon of October 29, 1989, and/or that any agent of the government was motivated to seek a roving warrant, in whole or in part, by a desire to protect the identity of one or more informants.[8]

d) Any document or record that is favorable to the defendants because it tends to contradict any of this court's findings of fact and/or conclusions of law in <u>United States v. Ferrara</u>, <u>supra</u>.

e) Any document or record relating to the destruction of any relevant document or record, including, but not limited to, the FD-256 forms from 1989 referred to in Exhibit 1C to the April 9, 1997 Affidavit of Paul E. Coffey, Esq.

---

[8]If responding to this provision of this Order would require the government to disclose an informant other than Mercurio and the government wishes to have the court conduct a <u>Roviaro</u> analysis before determining whether such a disclosure should be required, it may submit all relevant information to the court, <u>ex parte</u> and under seal, for the court's consideration <u>in camera</u>. See <u>United States v. Higgins</u>, 995 F.2d 1, 3 (1st Cir. 1993). However, in essence, the court intends, and hereby ORDERS, that it be informed if Mercurio was not the sole source, other than Vincent Federico's furlough request, of the government's information concerning the location of the possible LCN induction ceremony.

8

6. The government shall, by July 18, 1997, inform the court whether there are issues similar to those addressed in the May 22, 1997 Memorandum and Order which exist with regard to other applications for electronic surveillance relating to this case, as to which at least one defendant has standing, in addition to the issue discussed in the government's June 17, 1997 submission regarding the identification of Burton Krantz as a confidential source as well as a named target in the applications for electronic surveillance of Joseph Yerardi's telephones. Such issues include, but are not limited to, the naming in an application for electronic surveillance of an informant as a target or person expected to be intercepted, and/or the failure to refer to an informant with relevant information in an application either as a specific confidential source ("CS") or generally as among those, if any, represented to be unwilling to testify.

7. The government's duty to seek relevant materials and to make disclosures pursuant to this Order is a continuing duty. See Fed. R. Crim. P. 16(c). If the government at any time discovers or develops documents or records subject to this Order that have not been produced, they shall be produced forthwith.[9]

8. If the government is uncertain whether any document or

_____

[9]In the context of this case it is foreseeable that relevant documents and records may be generated by related investigations or proceedings, including any FB-OPR investigation concerning matters relating to this case, and/or any criminal investigation of the charges made in the June 25, 1997 Flemmi Affidavit. Thus, careful attention to this continuing duty is particularly important in this case.

9

record must be produced pursuant to this Order, or otherwise wishes to have the guidance of the court regarding a possible disclosure, it may submit the document or record ex parte and under seal, for the court's consideration in camera.

9. All documents and records produced pursuant to this Order, or subsequently in discovery, are subject to the following restrictions. See Fed. R. Crim. P. 16(d); Alderman v. United States, 394 U.S. 165, 184 (1969); United States v. United States Dist. Court for the Eastern Dist. of Michigan, 407 U.S. 297, 324 (1972); United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995); Morgan v. United States, 923 F.2d 195, 197 n.2 (D.C. Cir. 1991).

a) The documents, records, and information they contain shall be disclosed only to: (1) counsel for the government and the individuals necessary to assist them in this case; and (ii) counsel for each defendant, the defendants, and the individuals necessary to assist their counsel in this case. Each of the foregoing is an "Authorized Individual" for the purpose of this Order.

b) The documents and information they contain shall be used by each Authorized Individual solely for the purpose of litigating matters in this case. Each Authorized Individual shall not divulge the documents and information they contain to anyone who is not an Authorized Individual.

c) Submissions to the court referring to documents, records, or information received pursuant to this Order, or in subsequent discovery, shall be filed (i) at least temporarily under seal, and (ii) with a proposed redacted version to be made, upon

10

order of the court, part of the public record if the complete document is not unsealed.

d)    Each Authorized Individual shall file, under seal, a statement under oath representing that he or she has read ¶ 9 of this Order and recognizes that a willful violation of it may be deemed a civil and/or criminal contempt.

10.   All relevant documents and records, including notes, in the possession, custody, or control of any agent, attorney or agency of the government subject to this Order shall be preserved.

11.   The defendants shall, by July 18, 1997, file a list of the witnesses they propose to call at the forthcoming evidentiary hearings and describe briefly the relevance of the proposed witnesses' testimony.  The government shall, by July 25, 1997, also do so.

12.   Counsel for the parties shall confer and, by July 29, 1997, report to the court, jointly if possible but individually if necessary, concerning any issues requiring resolution before evidentiary hearings commence, beginning with the 1984-85 electronic surveillance and related matters regarding Flemmi and Bulger.

UNITED STATES DISTRICT COURT

DIVIDER

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Cr. No. 94-10287 |
| | ) | |
| FRANCIS P. SALEMME, ET AL. | ) | |

ORDER

WOLF, D.J.
June 26, 1997
Corrected July 3, 1997

For the reasons that have been discussed at the hearings on June 23, 24, and 25, 1997, and which will be described at the hearing on June 27, 1997, with regard to discovery concerning the evidentiary hearings that have been granted concerning defendants' motions to suppress the 1984-85 Drug Enforcement Administration ("DEA") and Federal Bureau of Investigation ("FBI") electronic surveillance targeting defendants Stephen Flemmi and James "Whitey" Bulger, among others, (M.B.D. No. 84-795), the October 29, 1989 FBI electronic surveillance of 34 Guild Street, Medford, Massachusetts, (M.B.D. No. 89-1015), and certain related matters including defendants' claims that Flemmi and Bulger were acting in cooperation with the FBI concerning at least some of the acts alleged to be crimes in the Fourth Superseding Indictment ("4SI") including the RICO, RICO conspiracy, and conspiracy to extort bookmakers and drug dealer, charges (4SI, Counts 1, 2, and 3), it is hereby ORDERED that:

1. In responding to this Order the attorneys for the government shall inform of this Order all federal, state, and local law enforcement agencies or entities that: (a) formally participated in the criminal investigation that resulted in this

651

case;[1] (b) provided to the federal government information that was included in any application or affidavit concerning M.B.D. Nos. 84-795 and/or 89-1015, and/or provided information which was not referred to in any such affidavit or application but which is relevant to the questions now being litigated of whether the government made the "full and complete statement[s]" required by 18 U.S.C. §§ 2518 (1)(c) and/or (11)(a)(ii); or (c) have evaluated or investigated any issues relevant to the pending proceedings.[2]

    2.   The government shall as soon as possible, and in any event by July 1, 1997, produce to counsel for defendant Stephen Flemmi:

    a)   All statements by Flemmi within the meaning of Fed. R. Crim. P. 16(a)(1)(A).[3]

---

[1]Such agencies include, but may not be limited to, the FBI, including its Office of Professional Responsibility ("FBI-OPR"), the Drug Enforcement Administration, the Massachusetts State Police, the Quincy, Massachusetts Police Department, the Organized Crime Section of the Criminal Division of the Department of Justice, and the Offices of the United States Attorneys in Massachusetts and Rhode Island.

[2]Such entities may include, but not be limited to, the FBI-OPR, the Office of the Inspector General of the Department of Justice, the Office of Professional Responsibility of the Department of Justice, and the Public Integrity Section of the Criminal Division of the Department of Justice.

[3]With regard to all documents to be produced pursuant to this Order, the government may redact all file numbers, informant numbers, and other identifying information if it has a good faith belief that disclosure of such information may compromise the confidentiality of its recordkeeping system or the identity of informants, provided, however, that this process shall be conducted in a manner that does not result in the masking of relevant information, including, but not limited to, whether a redacted reference is to Flemmi, Bulger, or Angelo "Sonny"

b)     Any document or other record which is favorable to Flemmi and his codefendants because it tends to support Flemmi's claim that he was acting in cooperation with an agent or agency of the government in connection with one or more of the charges in the Fourth Superseding Indictment.

c)     As agreed by the government, if Flemmi is not furnished every document in his FBI "informant" and "administrative" files in response to subparagraphs (a) and (b) hereinabove, the court shall be provided the remaining undisclosed documents for its <u>in camera</u> review in order to determine whether they should be disclosed to Flemmi.

3.     Upon receiving the documents and records to be provided pursuant to ¶ 2 hereinabove, Flemmi and his counsel shall conduct a prompt review and inform the court if Flemmi objects to any such documents and records being disclosed to his codefendants.  If Flemmi does not object, his counsel shall so inform the government, which shall then provide such documents and records to Flemmi's codefendants.

4.     The government shall, by July 18, 1997, produce to counsel for each defendant:

a)     Any additional documents or records relied upon by FBI Special Agent John Michael Callahan, Chief Division Counsel for the Boston Division of the FBI, in concluding that "Flemmi's control agents were obviously aware over the years from what Flemmi

_____

Mercurio, or whether the redacted portions of a document refer to one or more than one source of information.

3

reported that he was engaged in illegal gambling and in LCN policymaking" and that such agents "'at least tacitly authorized (his) participation.'" Affidavit of Paul E. Coffey, Esq., dated November 13, 1995, and filed ex parte, under seal, ¶ 7 n.1 (evidently quoting a statement by Callahan).[4]

b) Any document or record that tends to support Flemmi's claim that Bulger was acting in cooperation with an agent or agency of the government in connection with one or more of the charges in the 4SI. See June 25, 1997 Affidavit of Stephen J. Flemmi. Such documents or records shall include, but not be

---

[4]The court is not ordering that Callahan's written report be furnished to defendants by July 18, 1997. The government is, however, encouraged to do so in order to facilitate the efficient progress of the evidentiary hearings now being scheduled concerning the motion to suppress MBD No. 84-795. The defendants have expressed their intention to call Callahan as a witness at those hearings. If he is called to testify, he will be deemed a government witness. See Fed. R. Crim. P. 12(i). After he has testified, the defendants will be entitled to his relevant written statements, including at least portions of the report quoted by Coffey. Id.; Advisory Committee Note to 1983 Amendment regarding Fed. R. Crim. P. 12(i)("when a federal . . . law enforcement officer has testified at a suppression hearing, the defendant will be entitled to any statement of the officer in the possession of the government and relating to the subject matter to which the witness has testified, without regard to whether the officer was in fact called by the government or the defendant"); United States v. Duncan, 712 F.Supp. 124, 130 (S.D. Ohio 1988). If, as it appears, any arguable work-product privilege has been waived, the defendants will obtain at least part of Callahan's report eventually and it is preferable that they receive it prior to his testimony. Indeed, even if the government believes that it may have a basis for protecting Callahan's report from compelled disclosure, it may decide that in the present posture of this case it is in the interest of the fair administration of justice to disclose it voluntarily. See, e.g., Berger v. United States, 295 U.S. 78, 88 (1935) (stating that the government's interest is "not that it shall win a case, but that justice shall be done").

4

limited to, those relied upon by Callahan if, as it appears, he also concluded that Bulger's participation in illegal gambling and LCN policymaking was at least tacitly approved by agents of the FBI.

c) Any document or record that tends to show that Department of Justice and/or FBI regulations or guidelines were, in any way, not complied with concerning Flemmi and/or Bulger. The documents and records covered by this subparagraph include, but are not limited to, materials indicating that: (i) required records were not prepared or maintained;[5] (ii) required instructions were not given; (iii) unauthorized instructions were given; (iv) established procedures for seeking authorization or guidance concerning the participation of an informant in criminal activity were not followed; and/or (v) any required notification to appropriate authorities of unauthorized criminal activity by Flemmi and/or Bulger was not made.

d) The names of each agent of the government who dealt

---

[5] If government agents failed to follow required or customary procedures to record accurately communications with informants relevant to this case, the court will consider the possibility of ordering the government, in the discharge of its Brady obligations, to conduct appropriate interviews as part of its "duty to learn of any favorable evidence known to others acting on the government's behalf." Kyles v. Whitley, 115 S.Ct. 1555, 1567 (1995); see also, United States v. Hanna, 55 F.3d 1456, 1460-61 (9th Cir. 1995)(holding that government, as part of its duty under Kyles, was required in particular circumstances to inquire about oral, unrecorded statements between police officers); United States v. Van Nuys, 707 F.Supp. 465, 470 (D. Colo. 1989)(holding that deliberate failure to prepare DEA 6 reports of witness interviews constituted a violation of the duty to preserve evidence that deprived defendant of right to a fair trial).

with Flemmi and/or Bulger in his capacity as an informant; or who had responsibility for evaluating his fitness to serve, or continue to serve, as an informant; or had responsibility for reviewing or approving his participation in any criminal activity.

e)   Any document or record which tends show that the government did not make the full and complete statement concerning the necessity for electronic surveillance required by 18 U.S.C. § 2518 (1)(c) in any application or affidavit relating to M.B.D. 84-795.

f)   Any document or record that tends to contradict any representation in any application or affidavit relating to M.B.D. 84-795 including, but not limited to, representations that: (i) Bulger and Flemmi were illegally participating in gambling offenses, see, e.g., December 24, 1984 Affidavit of Steven Boeri ("Boeri Aff.") at 3-4, Bate Stamp ("BS") 14579-80; (ii) Bulger and Flemmi were illegally participating in narcotics offenses, id. at 2-3, BS 14578; (iii) electronic surveillance was necessary to determine or prove the illegal activities of Bulger and Flemmi, id. at 100-01, BS 14677-78; and (iv) electronic surveillance was necessary to determine or prove the illegal activities of alleged associates of Bulger and Flemmi, id.

5.   With regard to the electronic surveillance of 34 Guild Street, Medford, Massachusetts on October 29, 1989, M.B.D. No. 89-1015, the government shall, by July 18, 1997, produce to counsel for each defendant:

a)   Any document or record reflecting information

6

received from Mercurio which is relevant to whether or not the government, in applying for the roving warrant, made the "full and complete statement[s]" concerning necessity and the practicality of specifying the place to be bugged required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii). Such documents and records include, but are not be limited to, materials relating to when Mercurio discussed the possible LCN induction ceremony with agents of the government, Mercurio's communications concerning the location of that event, and Mercurio's statements, if any, concerning his willingness to testify if necessary and/or to record any conversations consensually.[6]

     b)   Any document or record that tends to show that Department of Justice and/or FBI regulations or guidelines were, in any way, not complied with concerning Mercurio.   See ¶ 4(c) hereinabove.[7]

     c)   Any other document or record helpful to the defendants because it tends to show that the government did not make the "full and complete statement[s]" concerning necessity and the practicality of specifying the place to be bugged required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii), as those requirements have

---

[6]On June 25, 1997 the court understood the government to represent that it was willing to provide discovery relevant to the October 29, 1989 electronic surveillance concerning Mercurio comparable to that being ordered more generally concerning Bulger and Flemmi.

[7]Such information is, among other things, relevant and material concerning the credibility of any testimony Mercurio may provide.

been interpreted by this court. See United States v. Ferrara, 771 F.Supp. 1266 (D. Mass. 1991); May 22, 1997 Memorandum and Order Unsealed and Partially Undredacted June 6, 1997 ("May 22, 1997 Memorandum and Order") at 9-11; June 19, 1997 Memorandum and Order at 10 n.5. Such documents and records include, but are not limited to, materials containing information which tends to show that the government was told, or learned, the address of the planned LCN induction ceremony prior to the afternoon of October 27, 1989, and/or that any agent of the government was motivated to seek a roving warrant, in whole or in part, by a desire to protect the identity of one or more informants.[8]

     d)  Any document or record that is favorable to the defendants because it tends to contradict any of this court's findings of fact and/or conclusions of law in United States v. Ferrara, supra.

     e)  Any document or record relating to the destruction of any relevant document or record, including, but not limited to, the FD-256 forms from 1989 referred to in Exhibit 1C to the April 9, 1997 Affidavit of Paul E. Coffey, Esq.

---

[8]If responding to this provision of this Order would require the government to disclose an informant other than Mercurio and the government wishes to have the court conduct a Roviaro analysis before determining whether such a disclosure should be required, it may submit all relevant information to the court, ex parte and under seal, for the court's consideration in camera. See United States v. Higgins, 995 F.2d 1, 3 (1st Cir. 1993). However, in essence, the court intends, and hereby ORDERS, that it be informed if Mercurio was not the sole source, other than Vincent Federico's furlough request, of the government's information concerning the location of the possible LCN induction ceremony.

6. The government shall, by July 18, 1997, inform the court whether there are issues similar to those addressed in the May 22, 1997 Memorandum and Order which exist with regard to other applications for electronic surveillance relating to this case, as to which at least one defendant has standing, in addition to the issue discussed in the government's June 17, 1997 submission regarding the identification of Burton Krantz as a confidential source as well as a named target in the applications for electronic surveillance of Joseph Yerardi's telephones. Such issues include, but are not limited to, the naming in an application for electronic surveillance of an informant as a target or person expected to be intercepted, and/or the failure to refer to an informant with relevant information in an application either as a specific confidential source ("CS") or generally as among those, if any, represented to be unwilling to testify.

7. The government's duty to seek relevant materials and to make disclosures pursuant to this Order is a continuing duty. See Fed. R. Crim. P. 16(c). If the government at any time discovers or develops documents or records subject to this Order that have not been produced, they shall be produced forthwith.[9]

8. If the government is uncertain whether any document or

---

[9]In the context of this case it is foreseeable that relevant documents and records may be generated by related investigations or proceedings, including any FBI-OPR investigation concerning matters relating to this case, and/or any criminal investigation of the charges made in the June 25, 1997 Flemmi Affidavit. Thus, careful attention to this continuing duty is particularly important in this case.

record must be produced pursuant to this Order, or otherwise wishes to have the guidance of the court regarding a possible disclosure, it may submit the document or record _ex parte_ and under seal, for the court's consideration _in camera_.

9. All documents and records produced pursuant to this Order, or subsequently in discovery, are subject to the following restrictions. _See_ Fed. R. Crim. P. 16(d); _Alderman v. United States_, 394 U.S. 165, 184 (1969); _United States v. United States Dist. Court for the Eastern Dist. of Michigan_, 407 U.S. 297, 324 (1972); _United States v. Amodeo_, 71 F.3d 1044, 1048 (2d Cir. 1995); _Morgan v. United States_, 923 F.2d 195, 197 n.2 (D.C. Cir. 1991).

a) The documents, records, and information they contain shall be disclosed only to: (1) counsel for the government and the individuals necessary to assist them in this case; and (ii) counsel for each defendant, the defendants, and the individuals necessary to assist their counsel in this case. Each of the foregoing is an "Authorized Individual" for the purpose of this Order.

b) The documents and information they contain shall be used by each Authorized Individual solely for the purpose of litigating matters in this case. Each Authorized Individual shall not divulge the documents and information they contain to anyone who is not an Authorized Individual.

c) Submissions to the court referring to documents, records, or information received pursuant to this Order, or in subsequent discovery, shall be filed (i) at least temporarily under seal, and (ii) with a proposed redacted version to be made, upon

10

order of the court, part of the public record if the complete document is not unsealed.

d) Each Authorized Individual shall file, under seal, a statement under oath representing that he or she has read ¶ 9 of this Order and recognizes that a willful violation of it may be deemed a civil and/or criminal contempt.

10. All relevant documents and records, including notes, in the possession, custody, or control of any agent, attorney or agency of the government subject to this Order shall be preserved.

11. The defendants shall, by July 18, 1997, file a list of the witnesses they propose to call at the forthcoming evidentiary hearings and describe briefly the relevance of the proposed witnesses' testimony. The government shall, by July 25, 1997, also do so.

12. Counsel for the parties shall confer and, by July 29, 1997, report to the court, jointly if possible but individually if necessary, concerning any issues requiring resolution before evidentiary hearings commence, beginning with the 1984-85 electronic surveillance and related matters regarding Flemmi and Bulger.

Mark L. Wolf / by STR
UNITED STATES DISTRICT COURT

11

# DIVIDER

UNITED STATES OF AMERICA      ) Cr. No. 94-10287-MLW
                                       )
v.                                )
                                       )
STEPHEN FLEMMI               )

ORDER

WOLF, D.J.                                 February 4, 2002

After a hearing on January 22, 2002, it is hereby ORDERED that:

1. The Estate of John L. McIntyre's Motion to Modify Protective Order, filed November 21, 2001 (Docket No. 2189) is ALLOWED to the extent set forth in paragraph 2 hereinbelow.

2. The Protective Order included in paragraph 9 of the June 26, 1997 Order, and amended on December 29, 1997, shall not operate to bar the production by the government of any documents that Judge Reginald Lindsay may order be produced in The Estate of John L. McIntyre v. United States, et al., Civ. No. 01-10408-RCL. See United States v. Salemme, 978 F.Supp. 386, 389-90 (D.Mass. 1997); United States v. Salemme, 1997 WL 810051 (D.Mass. Dec. 29, 1997) *4.

3. This Order does not affect any transcript, or portion of any transcript, that is under seal in this case. Any request to

3

unseal any such transcript, or to disclose information contained in any sealed transcript, shall be made to this court.


UNITED STATES DISTRICT JUDGE

4

# DIVIDER

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA ) Cr. No. 94-10287-MLW
)
v. )
)
STEPHEN FLEMMI )

WOLF, D.J.                    ORDER

March 22, 2002

In view of the March 18, 2002 Government's Submission Re:
Court Order Dated March 12, 2002, it is hereby ORDERED that
notwithstanding this court's June 26, 1997 Protective Order
(amended on December 29, 1997) and the two November 14, 1997
sealing Orders, the government is authorized to produce to the
Committee on Government Reform of the United States House of
Representatives the November 14, 1997 Order Disclosing Documents
and Information to Defendants from Certain In Camera Submissions
(Under Seal) and the Order Disclosing to Defendants Information
From August 13, 1997 Executive Summary of Department of Justice
Investigation (Under Seal).


UNITED STATES DISTRICT JUDGE

# DIVIDER

UNITED STATES OF AMERICA   )
                               )
     v.                      )       Cr. No. 94-10287-MLW
                               )
FRANCIS P. SALEMME, et al.  )

## ORDER

WOLF, D.J.                                 January 14, 2004

    The court has considered the United States' Assented to Motion for
Modification of Protective Order as entered on July 3, 1997 and
modified on December 29, 1997. See United States v. Salemme, 978 F.
Supp. 386, 389-90 (D. Mass. 1997) and United States v. Salemme, 1997 WL
810051, at *4 (D. Mass. Dec. 29, 1997) (the "Protective Order"). The
Protective Order restricts the dissemination and use of confidential
documents and information relating to certain confidential informants
of the Federal Bureau of Investigation (the "FBI") produced to the
defendants in this case. The government requests that the Protective
Order be modified to permit the documents and information subject to it
to be disclosed to certain employees of the Department of Justice to
permit them to meet the government's discovery obligations in civil
cases alleging misconduct by the FBI which have been generated by
revelations in the instant case. The government represents that counsel
for each of the defendants in the instant case, except for the fugitive
James "Whitey" Bulger, have assented to this motion.

    The Protective Order was entered largely to protect the interest
of the government in the confidentiality of information received from
its informants. Some disclosure and use of that information was
necessary to serve the interests of justice in the instant case.

Further disclosure is now necessary and appropriate to serve the interests of justice in the related civil cases.

Accordingly, it is hereby ORDERED that:

1.    Documents and information subject to the Protective Order may be disclosed to the employees of the Department of Justice listed on Attachment A hereto, who shall for the purposes of this Order be deemed "Authorized Individuals."

2.    Authorized Individuals may use and disclose such documents and information only in the proper discharge of their official duties, which includes, but is not limited to, producing them in discovery to litigants in civil cases. The judicial officers presiding in those cases may decide if any Protective Order concerning such discovery is appropriate. See Fed. R. Civ. P. 26(c).

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE

DIVIDER

UNITED STATES OF AMERICA     )
                             )
        v.                   )     Cr. No. 94-10287-MLW
                             )
FRANCIS P. SALEMME, et al.   )

<u>ORDER</u>

WOLF, D.J.                                      February 28, 2005

The Court received the attached Motion for Access to Documents in Criminal Action No. 04-CR-10323-RGS and Judge Richard Stearns endorsement allowing the motion "contingent on Judge Wolf's concurrence." Accordingly, it is hereby ORDERED that:

1.   Steven J. Weymouth is deemed an "Authorized Individual" for the purpose of the Protective Order included in paragraph 9 entered in this case on June 26, 1997 Order and amended on December 29, 1997. <u>See</u> <u>United States v. Salemme</u>, 978 F. Supp. 386, 389-90 (D. Mass. 1997); <u>United States v. Salemme</u>, 1997 WL 810057 *4 (D. Mass. Dec. 29, 1997).

2.   The foregoing Protective Order shall not operate to bar the use of any documents or information subject to it in <u>United States v. Francis P. Salemme</u>, 04-CR-10323-RGS, subject to any restrictions Judge Stearns may impose in that case.

3.   This Order does not affect any transcript, or portion of any transcript, that is under seal in this case. Any request to unseal any such transcript, or to disclose information contained in any such transcript, shall be made to, and will be decided by, this court.

4.   A copy of this Order shall be provided to Judge Stearns

2297

and to counsel in the <u>Salemme</u> case now assigned to him, 04-CR-10323-RGS.

_____/s/ MARK L. WOLF_____
UNITED STATES DISTRICT JUDGE

# DIVIDER

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA            )
                                    )
        v.                          )    Cr. No. 94-10287-MLW
                                    )
FRANCIS P. SALEMME, et al.          )

ORDER

WOLF, D.J.                                          May 3, 2006

The Court received from Judge Richards Stearns the attached Motion for Access to Documents in Criminal Action No. 94-CR-10287-MLW. The Motion seeks access to documents produced in discovery in this case, subject to the limitations imposed in connection with a request by predecessor counsel for defendant Francis Salemme in Cr. No. 10323-RGS, and the limitations imposed in connection with comparable requests in other cases. The government does not oppose the Motion if an appropriate order is obtained from this court.

Accordingly, it is hereby ORDERED that:

1. Robert George, Esq. and Kevin Reddington, Esq. are each deemed an "Authorized Individual" for the purpose of the Protective Order included in paragraph 9 of the Order entered in this case on June 26, 1997 and amended on December 29, 1997. See United States v. Salemme, 978 F. Supp. 386, 389-90 (D. Mass. 1997); United States v. Salemme, 1997 WL 810057 *4 (D. Mass. Dec. 29, 1997).

2. The foregoing Protective Order shall not operate to bar the use of any documents or information subject to it in United States v. Francis P. Salemme, 04-CR-10323-RGS, subject to any restrictions Judge Stearns may impose in that case.

2304

3.     This Order does not affect any transcript, or portion of any transcript, that is under seal in this case. Any request to unseal any such transcript, or to disclose information contained in any such transcript, shall be made to, and will be decided by, this court.

4.     A copy of this Order shall be provided to Judge Stearns and to counsel in the <u>Salemme</u> case now assigned to him, 04-CR-10323-RGS.

/s/ MARK L. WOLF
UNITED STATES DISTRICT JUDGE